[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12491

_____

FELIX GONZALEZ BARRIOS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A201-756-758

_____

Before LUCK, BRASHER, and ED CARNES, Circuit Judges.

PER CURIAM:

Felix Gonzalez Barrios petitions for review of the Board of Immigration Appeals's dismissal of his appeal of the immigration judge's order denying his application for asylum, withholding of removal, and relief under the Convention Against Torture. He argues that the immigration judge did not give reasoned consideration to his claims, applied incorrect legal standards to his asylum and withholding of removal claims, and violated his due process rights. After a careful review of the record, we partly dismiss and partly deny Gonzalez's petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### The Immigration Court Proceedings

Gonzalez is a native and citizen of Venezuela. In 2019, he entered the United States without valid immigration documents. The Department of Homeland Security served Gonzalez with a notice to appear before the Immigration Court, charging him with being removable. Gonzalez, appearing without an attorney, conceded removability and the immigration judge sustained the charge. He then filed an application for asylum, withholding of removal, and relief under the Convention Against Torture.

Gonzalez alleged in his application that, because of his political opinion, he feared he would be persecuted, tortured, and murdered by the Venezuelan government if removed to Venezuela. He wrote that he had been harmed on two occasions.

First, Gonzalez wrote that, in April 2017, he participated in a student-led protest against the Venezuelan government in the city of Valencia. Gonzalez fled the protest after the army deployed tear gas. Cars and trucks arrived as Gonzalez fled, and armed "civilians" got out of them. These men pointed guns at Gonzalez, told him to get in a truck or they would kill him, and then forced him into a truck and handcuffed him.

Gonzalez wrote that his kidnappers took him to a garage. There, the men beat Gonzalez, threatened to kill him, and demanded to know why he was protesting the government and who was the leader of the protest. Gonzalez wrote that the men said he wouldn't leave the garage alive, showed him blood stains on the floor, and told him that they would kill anyone who protested in the streets.

Second, Gonzalez wrote in his application that he had been harmed on September 1, 2017. But his application did not explain what happened to him on that day.

In a "credible fear" interview with an asylum officer, Gonzalez described his April 2017 kidnapping and identified two of his attackers as Sergio Sanchez Rondo and Jose Acosta Pena. Gonzalez explained that, later in 2017, the people who kidnapped him visited his mother-in-law's house looking for him and left a warrant for his arrest. He didn't mention any harm that happened to him on September 1, 2017.

The immigration judge held a hearing on Gonzalez's application. At the start of the hearing, Gonzalez provided the immigration judge with a human rights report and a news article detailing ongoing abuses in Venezuela, including extrajudicial killings by security forces and "colectivos"—government-sponsored armed groups.

Gonzalez also provided the immigration judge with a sworn statement. He wrote that he had been protesting the communist government of Venezuela when he was kidnapped by armed "civilians." Gonzalez described how they took him to a garage, beat him, and interrogated him. These men held him for two days, Gonzalez swore, and told him they would be watching him and would kill protestors in the future. Gonzalez alleged that he later went to the police but was told they could not investigate the government. Gonzalez did not say in his sworn statement that he was harmed on September 1, 2017.

Gonzalez testified at the removal hearing that he feared returning to Venezuela because of the April 2017 kidnapping and the death threats he received. He explained that he was kidnapped by colectivos, who worked for the Venezuelan government. Gonzalez testified that although the colectivos beat him, he was not seriously injured during the kidnapping.

The immigration judge asked Gonzalez what he thought would happen to him if he returned to Venezuela. Gonzalez believed the government would kidnap and kill him. He explained that after he reported the kidnapping to the police, the Venezuelan

21-12491              Opinion of the Court              5

government had his information and began searching for him. The government also had his family's information, Gonzalez testified, and the colectivos visited his mother-in-law's house looking for him.

After the government cross-examined Gonzalez, the immigration judge asked him if there was "anything else [he'd] like to" say "about why [he] fear[ed] return[ing] to Venezuela." Gonzalez said that he feared returning to Venezuela because of his political opinions.

The immigration judge orally denied Gonzalez's application for asylum, withholding of removal, and relief under the Convention Against Torture, and entered a written order explaining the denial. As to Gonzalez's asylum claim, the immigration judge found that Gonzalez failed to establish past persecution. This was because, the immigration judge explained, the harm he suffered in Venezuela didn't rise to the level of persecution and wasn't on account of a protected ground. The immigration judge also found that Gonzalez hadn't demonstrated a well-founded fear of future persecution. This was because Gonzalez hadn't shown that he would be singled out for persecution on account of a protected ground and hadn't established a pattern or practice of persecution against similarly situated Venezuelans. The immigration judge then concluded that the failure of Gonzalez's asylum claim meant that his withholding of removal claim—which had a higher burden of proof—necessarily failed. Finally, as to Gonzalez's claim under the Convention Against Torture, the immigration judge found that

there was no evidence that the Venezuelan government would torture Gonzalez if he returned.

Gonzalez appealed to the board. The board adopted the immigration judge's finding that the harm Gonzalez suffered in Venezuela didn't rise to the level of past persecution. But, as to whether Gonzalez established a well-founded fear of future persecution, the board concluded that it wasn't clear whether the immigration judge "considered the entirety of the record." The board remanded for the immigration judge to again consider whether Gonzalez established a well-founded fear of future persecution.

On remand, the immigration judge gave the parties ten days to "file any additional evidence, including but not limited to arguments in support of their positions on remand." The parties did not file any additional evidence or make any additional arguments.

The immigration judge then entered a second order denying Gonzalez's application for asylum, withholding of removal, and relief under the Convention Against Torture. The immigration judge explained that he had reviewed Gonzalez's application, the credible fear interview, the exhibits from the removal hearing, and Gonzalez's testimony. The immigration judge wrote that although Gonzalez alleged in his application that he had been harmed in April 2017 and on September 1, 2017, there was only evidence about the April 2017 incident. So, the immigration judge addressed the April 2017 incident.

The immigration judge found that Gonzalez failed to show a well-founded fear of future persecution for four reasons. First, the immigration judge found that Gonzalez failed to demonstrate an individualized risk of future persecution. The immigration judge explained that Gonzalez's participation in a "single protest over three years ago" wasn't enough to create that risk. Because thousands of people protested nationwide in Venezuela in 2017, the immigration judge wrote, the country conditions didn't imply that the Venezuelan government or its supporters would track Gonzalez down. The immigration judge also stressed that, other than one protest, Gonzalez was not politically active and was "not involved in any political organizations or associations." The fact that Gonzalez reported his kidnapping to the police but wasn't harmed, the immigration judge reasoned, further showed that he lacked a well-founded fear of future persecution. Finally, the immigration judge explained that Gonzalez's wife and children remained in Venezuela and hadn't been harmed.

Second, the immigration judge found that Gonzalez failed to establish a pattern or practice of persecution in Venezuela against government dissidents. The immigration judge explained that the country conditions in Venezuela demonstrated "general political strife" rather than a pattern or practice of persecuting people who oppose the government. Gonzalez's status as a one-time protestor, the immigration judge reasoned, "place[d] him among citizens . . . who oppose[d]" the government during a time of political upheaval.

Third, the immigration judge found that the government had rebutted the presumption that it would be unreasonable for Gonzalez to relocate within Venezuela. The immigration judge explained that there was no evidence that anyone had looked for Gonzalez in Venezuela since 2018. The immigration judge also stressed that Gonzalez spoke to government officials when he left Venezuela in 2017 and again when he needed a passport stamp in 2018, yet they did not harm him.

And fourth, the immigration judge found that Gonzalez had failed to demonstrate that the government of Venezuela was unable or unwilling to help him. This was because Gonzalez said that the colectivos who kidnapped him were armed civilians rather than government actors. The immigration judge also relied on Gonzalez's failure to report to the police the "subsequent threats" and the search for him at his mother-in-law's home. Venezuela had held government officials accountable for wrongdoing, the immigration judge explained, and had even charged security forces for "unlawful actions."

As to Gonzalez's claim for withholding of removal, the immigration judge denied relief for three reasons. First, the immigration judge found that Gonzalez failed to establish past persecution on account of a protected ground. The immigration judge explained that the harm Gonzalez suffered in Venezuela didn't rise to the "extreme" level required for persecution. The immigration judge also found there was no nexus between the harm Gonzalez suffered and his political opinion. The immigration judge reasoned

that the men who kidnapped Gonzalez were "motivated by their own political beliefs that the protests were improper," and not by Gonzalez's beliefs.

Second, the immigration judge found that Gonzalez had failed to establish that it was more likely than not that his life or freedom would be threatened in Venezuela.  The immigration judge adopted its prior finding that Gonzalez failed to establish a well-founded fear of future persecution.  And third, the immigration judge found that the government had rebutted the presumption that it would be unreasonable for Gonzalez to relocate within Venezuela.

Finally, as to Gonzalez's claim for relief under the Convention Against Torture, the immigration judge found that because Gonzalez failed to establish persecution, it "necessarily follow[ed]" that he had failed to establish that he would likely be tortured because of a protected ground.  The immigration judge also found that Gonzalez failed to establish that any torture would occur by or with the acquiescence of the government.

### The Board of Immigration Appeals's Decision

Gonzalez, now represented by counsel, appealed to the board.  He argued that the immigration judge erred:  (1) by not developing the record and asking him about the incident on September 1, 2017, in violation of his right to due process; (2) in finding that he hadn't established past persecution; (3) in finding that he hadn't established a well-founded fear of future persecution; (4) in

finding no nexus between his past and feared persecution and his political opinion; (5) in finding that the government rebutted the presumption that it would be unreasonable for him to relocate within Venezuela; (6) in finding that Venezuela was able and willing to protect him; and (7) in finding that he hadn't established his eligibility for relief under the Convention Against Torture.

The board dismissed Gonzalez's appeal. As to his asylum claim, the board explained that the only issue on appeal was whether Gonzalez established a well-founded fear of future persecution in Venezuela on account of a protected ground. The board adopted the immigration judge's finding that Gonzalez had not established a well-founded fear of future persecution, and that he had not established a pattern or practice of persecution against similarly situated Venezuelans.

As to Gonzalez's claim for withholding of removal, the board concluded that the failure of Gonzalez's asylum claim, which had a lower burden of proof, meant that his withholding of removal claim also failed. As to Gonzalez's claim under the Convention Against Torture, the board adopted the immigration judge's finding that Gonzalez had failed to establish that he would likely be tortured if he returned to Venezuela.

Finally, as to Gonzalez's claim that the immigration judge violated his due process rights by failing to develop the record, the board concluded that the immigration judge asked Gonzalez "specific questions to elicit information" about his claims, asked "follow up questions to the answers provided," and allowed Gonzalez "to

add any information which may have been overlooked." As to Gonzalez's claim that the immigration judge violated his due process rights by not asking him about the events of September 1, 2017, the board concluded that Gonzalez failed to establish prejudice because he had not proffered "what actually occurred that day."

## STANDARD OF REVIEW

We review the board's decision as the final agency decision unless the board expressly adopted the immigration judge's decision. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). Where the board agreed with the immigration judge's reasoning, we review the decisions of both the board and the immigration judge to the extent of the agreement. *Id.*

We review de novo a claim that the agency failed to provide reasoned consideration for its decision, applied a legally incorrect standard, and violated the petitioner's due process rights. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016); *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).

## DISCUSSION

We first address Gonzalez's argument that the immigration judge did not give reasoned consideration to his claims. We next consider Gonzalez's contention that the immigration judge applied the wrong legal standard to his asylum and withholding of removal claims. Finally, we review Gonzalez's argument that the immigration judge violated his due process rights.

*Reasoned Consideration*

The board must give "reasoned consideration" to an applicant's claims, *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019), and "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) (citation omitted). The board "must consider all the evidence submitted." *Ali*, 931 F.3d at 1333 (citation omitted). But it "need not address specifically each claim the petitioner made . . . ." *Cole v. U.S. Att'y Gen.*, 712 F.3d 517, 534 (11th Cir. 2013) (citation omitted). "What is central to a showing of reasoned consideration is that the reasoning of the [i]mmigration [j]udge and the [board] is logical and can be reviewed for error." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 874 (11th Cir. 2018). The agency "does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Jeune*, 810 F.3d at 803.

Gonzalez argues that, for two reasons, the immigration judge failed to give reasoned consideration to his claims. First, he contends that the immigration judge failed to consider all of the evidence. Second, he argues that the immigration judge misstated the record and inexplicably rejected logical conclusions without adequate explanation.

Failure to consider all of the evidence

In the removal order, the immigration judge explained that although Gonzalez alleged in his application that he was harmed in April 2017 and again in September 2017, the statement in the application and the evidence at the removal hearing dealt only with the April 2017 harm—Gonzalez's kidnapping.  Thus, the immigration judge "only address[ed] the event in April 2017."  Gonzalez argues that the immigration judge failed to give reasoned consideration to his claims by only focusing on his kidnapping and disregarding the other harms he suffered, including the "second interaction" with the colectivos in September 2017 and the warrant for his arrest.

As to the incident on September 1, 2017, the immigration judge didn't fail to consider this evidence because, simply put, there was no evidence to consider.  In his credible threat interview, Gonzalez didn't mention the September 1, 2017 incident.  He didn't write about the September 1, 2017 incident in the sworn statement he gave to the immigration judge.  And Gonzalez didn't testify about the September 1, 2017 incident during his removal hearing—even after the immigration judge asked if there was "anything else" he had to say about why he feared returning to Venezuela, and even after he was given the opportunity to supplement the record on remand.  Although Gonzalez's application alleged—in a single line without explanation—that there was an incident with the colectivos on September 1, 2017, the application's statement only discussed the April 2017 kidnapping incident.  In short, there was no evidence about what, if anything, happened to Gonzalez on

September 1, 2017.  The immigration judge didn't err in failing to consider evidence that wasn't in the record.

As to Gonzalez's contention that the immigration judge "necessarily excluded" from its consideration any evidence besides the April 2017 kidnapping, the immigration judge considered:  (1) the interaction Gonzalez had with the police after the kidnapping; (2) the "general threats" Gonzalez received after the kidnapping; (3) the people who visited Gonzalez's mother-in-law looking for him; and (4) the fact that Gonzalez's wife and daughter remained in Venezuela and hadn't been harmed.  Gonzalez is wrong that the immigration judge "necessarily excluded" from consideration all evidence besides the April 2017 evidence.  And although the removal order doesn't mention every piece of evidence in the case—like the warrant for Gonzalez's arrest—the immigration judge was "not required to discuss every piece of evidence presented before him."  *Tan*, 446 F.3d at 1376.

<u>Misstating the record and inexplicably rejecting</u>
<u>logical conclusions without adequate explanation</u>

Gonzalez argues that the immigration judge misstated the record and inexplicably rejected logical conclusions without adequate explanation—and therefore failed to give his claims reasoned consideration—in five different ways.

*First*, Gonzalez contends that the immigration judge did not provide a "reasonable justification" for finding no nexus between his "feared harm" and his political opinion.  But the immigration judge's nexus finding is not before us.  Where the board expressly

adopts the immigration judge's decision, we review both decisions "to the extent of the agreement." *Gonzalez*, 820 F.3d at 403. Here, the immigration judge made its nexus finding in analyzing Gonzalez's withholding of removal claim. The immigration judge didn't rely on nexus to reject Gonzalez's asylum claim. Rather, the immigration judge found that the asylum claim failed because Gonzalez failed to establish a well-founded fear of future persecution.

The board, in turn, didn't adopt the immigration judge's nexus finding to reject Gonzalez's withholding of removal claim. Rather, the board determined that Gonzalez's withholding of removal claim failed because he "failed to satisfy the lower burden of proof required for asylum." Thus, the board did not reach the issue of nexus. "We do not consider issues that were not reached by" the board, *see id.*, so we do not.

*Second*, Gonzalez maintains that the immigration judge mischaracterized the record by finding that the Venezuelan government or its supporters wouldn't locate "an individual who engaged in one protest years earlier." But the immigration judge gave reasoned consideration to the record and considered that: (1) Gonzalez reported his kidnapping to the police and wasn't harmed; (2) Gonzalez stayed in Venezuela through 2017 following his report and wasn't harmed; (3) Gonzalez interacted with government officials when he left Venezuela and wasn't harmed; (4) when Gonzalez's mother-in-law's house was visited, she wasn't harmed; (5) Gonzalez's wife and children remained in Venezuela and they haven't been harmed; and (6) the Venezuelan government hadn't

questioned Gonzalez's family about him since 2018. Regardless of what weight the evidence deserved, the immigration judge didn't mischaracterize the record. *See Jeune*, 810 F.3d at 803 (explaining that a "reasoned-consideration examination does not look to whether the agency's decision is supported by substantial evidence"). The mere fact that there was conflicting evidence about whether supporters of the Venezuelan government would seek Gonzalez out doesn't mean that the immigration judge failed to give his claims reasoned consideration. *See K.Y. v. U.S. Att'y Gen.*, ___ F.4th ___, 2022 WL 3205506, *4 (11th Cir. Aug. 9, 2022) ("That the [i]mmigration [j]udge reached a different decision than K.Y. would have liked does not mean that she did not give reasoned consideration to the evidence.").

*Third*, Gonzalez contends that the immigration judge mischaracterized the record by finding that there was a "general danger" created by "political unrest" in Venezuela, when the record established that the Venezuelan government used "extreme force" to "suppress opposition." But the immigration judge found, under the facts presented, that the Venezuelan government "has suppressed political protests." And the immigration judge acknowledged that "political violence is common in Venezuela." Thus, we cannot conclude that the immigration judge "misstate[d] the contents of the record." *Jeune*, 810 F.3d at 803.

*Fourth*, Gonzalez argues that the immigration judge's finding that the colectivos who kidnapped him were armed civilians, rather than government-sponsored security forces, was

"disingenuous" and reflected "a failure to reasonably consider" his claims. But the record supported the immigration judge's finding that Gonzalez's kidnappers were armed civilians. Gonzalez wrote in his application and said in his credible fear interview that his kidnappers were "civilians." And he again called them "civilians" in the sworn statement he gave to the immigration judge during the removal hearing. The immigration judge didn't fail to give Gonzalez's claims reasoned consideration simply by making a factual finding—with record support—that was adverse to his claims. *See K.Y.*, 2022 WL 3205506, \*4.

*Fifth and finally*, Gonzalez contends that the immigration judge "evince[d] a lack of reasoned consideration" in finding that the Venezuelan government would protect him or otherwise not acquiesce to his harm. But, in rejecting Gonzalez's asylum and withholding of removal claims, the board adopted the immigration judge's "dispositive" findings that Gonzalez had failed to establish a well-founded fear of future persecution and a pattern or practice of persecution. Because these findings were dispositive, the board "decline[d] to address" whether "the Venezuelan government would be unwilling or unable to protect [Gonzalez] from his persecutors." Because the board did not adopt the immigration judge's acquiescence finding, we do not consider the finding here. *See Gonzalez*, 820 F.3d at 403.

## Incorrect Legal Standard

Gonzalez maintains that, in two different ways, the immigration judge applied the wrong legal standard to his asylum and

withholding of removal claims.  First, Gonzalez argues that the immigration judge legally erred in concluding that he couldn't demonstrate a well-founded fear of future persecution" without "physical harm."  Second, Gonzalez argues that the immigration judge applied the wrong standard in finding that he could reasonably relocate within Venezuela.

As to Gonzalez's argument that the immigration judge erroneously required him to show physical harm in order to establish a well-founded fear of future persecution, we lack jurisdiction.  We cannot review an alleged error by the immigration judge that the petitioner did not exhaust before the board.  8 U.S.C. § 1252(d)(1); see also Amaya–Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1251 (11th Cir. 2006) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto.").  Where a petitioner fails to assert an issue before the board and then raises it before us, he has "failed to exhaust his administrative remedies." Jeune, 810 F.3d at 800.  Gonzalez did not argue to the board that the immigration judge applied the wrong legal standard in requiring him to show past physical harm to establish a well-founded fear of future persecution.  He therefore failed to exhaust his administrative remedies. See id.  So, we dismiss this part of Gonzalez's petition. See Amaya–Artunduaga, 463 F.3d at 1251.

As to Gonzalez's argument that the immigration judge applied  the wrong standard in finding that he could reasonably relocate within Venezuela, the board adopted the immigration judge's

findings that Gonzalez had failed to establish a well-founded fear of future persecution and failed to establish a pattern or practice of persecution. Because these findings were "dispositive" as to Gonzalez's asylum and withholding of removal claims, the board "decline[d] to address" whether the government rebutted the presumption that Gonzalez could not reasonably relocate within Venezuela.

Again, where the board expressly adopts the immigration judge's decision, we review both decisions "to the extent of the agreement." *Gonzalez*, 820 F.3d at 403. Here, the board did not adopt the immigration judge's finding about Gonzalez's ability to safely relocate within Venezuela. We therefore will not consider the relocation issue because the board did not rely on it as part of the agency's final decision. *See id.*

### Due Process

Finally, Gonzalez contends that the board erred in concluding that the immigration judge didn't violate his due process rights. Gonzalez maintains that the immigration judge had a duty to make reasonable efforts to develop the record because he was unrepresented by counsel. *See Matter of J-F-F-*, 23 I. & N. Dec. 912, 922 (A.G. 2006) ("It is appropriate for [i]mmigration [j]udges to aid in the development of the record, and directly question witnesses, particularly where" a noncitizen "appears pro se and may be unschooled in the deportation process . . . ."). The immigration judge failed to make a reasonable effort, Gonzalez argues, because he: (1) didn't ask Gonzalez "direct questions" about the "specific

incidents" underlying his application, including the incident on September 1, 2017; (2) didn't explain the burden of proof until after Gonzalez testified; (3) conducted the removal hearing without first reviewing the entire record; and (4) didn't give Gonzalez enough time to supplement the record after the board's remand.

A noncitizen facing removal is entitled to due process, which is "satisfied only by a full and fair hearing." *Ibrahim v. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987). Gonzalez must first establish that the immigration judge deprived him of liberty without due process of law, and then show that the violation caused him substantial prejudice. *See Lonyem v. U.S. Att'y Gen.*, 352 F.3d 1338, 1341–42 (11th Cir. 2003). "To show substantial prejudice," a noncitizen must "demonstrate that, in the absence of the alleged violations, the outcome of the proceeding would have been different." *Lapaix*, 605 F.3d at 1143.

As to Gonzalez's argument that the immigration judge didn't develop the record by questioning him about the incidents in his application, he failed to establish both a due process violation and prejudice. We assume, without deciding, that due process requires the immigration judge to make reasonable efforts to develop the record. Here, the immigration judge didn't violate Gonzalez's due process rights because the immigration judge made reasonable efforts to develop the record. At the hearing, the immigration judge asked Gonzalez: (1) why he feared returning to Venezuela; (2) why he thought the Venezuelan government wanted to harm him; (3) about the details of his kidnapping, including the motives

of his kidnappers and whether they injured him; (4) about the protest that led to his kidnapping and Gonzalez's reasons for protesting; and (5) about his efforts to report his kidnapping to the police. Each of these questions sought to develop the record about the incidents underlying Gonzalez's application.

Gonzalez stresses that the immigration judge didn't ask him about harm he suffered on September 1, 2017, even though his application mentioned—once, without further explanation—that date. But, after Gonzalez finished testifying, the immigration judge asked him whether there was "anything else" he'd like to say about why he feared returning to Venezuela. Gonzalez answered the question and still did not describe any harm he suffered on September 1, 2017. The immigration judge also gave Gonzalez the opportunity to file "any additional evidence" after the board's remand, but Gonzalez did not file any additional evidence about the incident on September 1, 2017. The record's silence about September 1, 2017 is because of Gonzalez's silence, not the immigration judge's failure to inquire. That is not a due process violation. *See Matter of J-F-F-*, 23 I. & N. Dec. at 922 (explaining that, although the immigration judge may question witnesses, "the [i]mmigration [j]udge must not take on the role of advocate").

Gonzalez also argues that the immigration judge didn't ask him about Sergio Sanchez Rondon and Jose Acosta Pena, even though he mentioned them in his application and credible fear interview. But, as Gonzalez explained in his credible fear interview, these men were part of the colectivos who kidnapped him. When

the immigration judge questioned Gonzalez about the kidnapping, he testified that Rondon and Pena were with the kidnappers. Thus, the record was developed as to Rondon and Pena's role in Gonzalez's kidnapping.

Finally, Gonzalez contends that the immigration judge failed to question him about the outstanding warrant for his arrest. But, in Gonzalez's credible threat interview, he told the asylum officer that, after the colectivos searched for him at his mother-in-law's house, they left behind a warrant for the crime of "disobeying authority." The immigration judge considered Gonzalez's credible threat interview in the removal order. The record was therefore developed as to the arrest warrant.

Even if the immigration judge violated Gonzalez's due process rights by not asking enough questions, which is not the case, Gonzalez has failed to establish prejudice. As to the incident on September 1, 2017, Gonzalez has never explained what allegedly happened on that day. Because he has not explained what information the immigration judge would have learned had he asked about that day, he has failed to establish that the "outcome of the proceeding would have been different" had the immigration judge asked. *See Lapaix*, 605 F.3d at 1144.

As to Rondon and Pena and the warrant, the immigration judge knew from Gonzalez's testimony that Rondon and Pena were with the kidnappers, and he knew from the credible threat interview that the colectivos left a warrant at Gonzalez's mother-in-law's house. Gonzalez cannot establish that the outcome of the

proceeding would have been different had the immigration judge heard these facts twice rather than once. *See id.*

As to the other parts of Gonzalez's due process claim—his arguments that the immigration judge violated his due process rights by not telling him upfront about the burden of proof, by conducting the hearing without first reviewing the record, and by not giving Gonzalez enough time to supplement the record after the board's remand—we lack jurisdiction over those claims. In his appeal to the board, Gonzalez argued that the immigration judge violated his due process rights by not questioning him about what happened on September 1, 2017. Gonzalez didn't raise that the immigration judge violated his due process rights by not explaining the burden of proof, by not reviewing the record before the removal hearing, and by not giving him enough time to supplement the record after the remand. Because Gonzalez didn't present these claims to the board, he failed to exhaust his administrative remedies. *Jeune*, 810 F.3d at 800 ("[W]hen a petitioner has neglected to assert an error before the [board] that he later attempts to raise before us, the petitioner has failed to exhaust his administrative remedies."). We therefore lack jurisdiction over these parts of Gonzalez's due process claim. *Amaya–Artunduaga*, 463 F.3d at 1251 (explaining that "we lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies"). So, we dismiss them.

**PETITION DISMISSED IN PART AND DENIED IN PART.**[1]

---

[1] This case was originally scheduled for oral argument, but under 11th Cir. R. 34–3(f) it was removed from the oral argument calendar by unanimous consent of the panel.